**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| JUDY MAC | § | |
| | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 1:19-cv-01230-RP |
| | § | |
| ELK ELECTRIC, INC.; and | § | |
| MICHAEL KANETZKY; | § | |
| | § | |
|     *Defendants.* | § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
FOR PROTECTIVE ORDER**

**I.   Introduction**

Plaintiff has requested that this Court prohibit inquiries into and protect from disclosure circumstances surrounding specific, enumerated incidents wherein Defendants have accused her of criminal wrongdoing. Plaintiff bases this request both on the *in terrorem* effect that Defendants deposing Plaintiff about these incidents would create, and also because the sought-after discovery does not materially bear on any claim or defense in this action.

In their response to Plaintiff's motion (Doc. 19) ("Response"), Defendants incorrectly aver that they have not accused Plaintiff of wrongdoing associated with four of the six enumerated incidents and that the sought-after discovery's relevance would outweigh any *in terrorem* effect. As the prejudice and burden of the discovery sought by Defendants severely outweighs any possible relevance, this Court should enter the protective order requested by Plaintiff under Rule 26(c) of the Federal Rules of Civil Procedure.

*Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Protective Order*   Page 1 of 6

## II. Plaintiff has demonstrated that the sought-after discovery would create an *in terrorem* effect for Plaintiff and future civil rights litigants.

### A. Defendants have accused Plaintiff of criminal misconduct related to all of the enumerated incidents.

Defendants do not deny that they have accused Plaintiff of wrongdoing with respect to the first two enumerated incidents in Plaintiff's motion and claim they either do not know of or have not *yet* accused Plaintiff of wrongdoing with respect to the remaining four incidents. (Response at 2 and 4.) While it may be true that "Defendants have not *filed a criminal complaint*" regarding most of these incidents (*see* Response at 2), Defendant Michael Kanetzky certainly has claimed, or at least suggested, that Ms. Mac committed a criminal offense in each incident.

Plaintiff generated the list of incidents in her motion based on Defendants' own document production in this lawsuit. Specifically, in an email to a National Labor Relations Board (NLRB) investigator, Defendants accused Plaintiff of "poor communication and handling of a *fraudulent wire transaction* of about $9.8K" and "apparent ELK payment to a storage vendor and her getting reimbursed by a subtenant for rent to [Plaintiff]… a possible *theft charge*." (Exhibit A, Email Correspondence from Michael Kanetzky to NLRB Field Examiner Carrie Gray, dated September 12, 2019 (emphasis added).) Fraudulent wire transactions and theft are criminal offenses. Further, Defendants produced a payroll report for Plaintiff, wherein the two transactions of $22,598.40 and $3,488.00 in June and July 2017 were circled and annotated with the words "what on earth is this? […] *Theft by Judy*? Need to investigate further." (Exhibit B, Elk Electric, Inc. Earnings Detail History 06/01/17 to 12/31/19 (emphasis added).) Finally, with regard to incident number 2 in which Defendants concede that they "sought an investigation by the FBI and Austin Police Department regarding two missing ACH transactions wherein Elk

appears to be the victim of a phishing scam," Defendants neglect to apprise the Court that Kanetzky reported to the FBI that he suspected Ms. Mac of somehow being behind the scam. (Exhibit C, Complaint Referral Form, Internet Crime Complaint Center, dated April 18, 2019, which states "[t]he conclusions are either Judy sent these monies some where (sic) and covered her tracks or someone captured her transmittal sheet and signature.")

And although Defendants deny having "accused" Ms. Mac of wrongdoing *yet* with regard to four of the six incidents—based on their narrow use of "accuse"—in an important tell, Defendants forewarn that "[t]hat is not to say that such might be alleged upon discovery of further evidence." (Response at 4.) If Defendants are not intentionally attempting to intimidate Ms. Mac, they have at least given her ample reason to believe they have or will attempt to seek criminal action against her for all of the enumerated incidents in her motion. As such, good cause exists for this Court to prohibit questioning into those specific incidents due to the *in terrorem* effect it would cause Plaintiff and other civil rights litigants to be interrogated under oath regarding irrelevant, baseless criminal accusations in a civil rights case.

### B.  Courts routinely prohibit similar discovery in analogous cases.

Discovery into immigration status in an employment case is analogous to the issue at hand. Indeed, Defendants' own Response cites to authority which relates to that exact scenario. (Response at 3, citing to *Lopez v. F.I.N.S. Construction, LLC,* No. 16-2408, 2017 WL 2364282 (E.D. La. May 31, 2017).) More concretely, this connection is evident because discovery into immigration status and related issues intimidates many employees because of the threat of immigration or criminal law enforcement, regardless of any tangential relevance and regardless of whether the employee has actually violated any law. This is exactly the dynamic at play here.

Here, Defendants seek to wield baseless accusations of misconduct, which have no material relevance to the lawsuit, against Plaintiff in order to intimidate and threaten her for bringing suit.

Defendants summarily cite *Lopez* to support the undisputed fact that courts do sometimes conclude that the relevance of the discovery sought outweighs the *in terrorem* effect. (*Id.*) This is of course true. The *Lopez* court required the plaintiffs to testify about their use of aliases for purposes of identifying employment records. Courts addressing this situation typically take a nuanced approach, allowing testimony or stipulations as to the core relevant question of the use of aliases, but barring questions about peripheral issues that would have an undue *in terrorem* effect. *See*, *e.g.*, *EEOC v. Bice of Chicago*, 229 F.R.D. 581, 583 (N.D. Ill. 2005) (permitting questioning about alias names used in employment while prohibiting questions about the circumstances surrounding plaintiffs' use of aliases); *Garcia v. Palomino, Inc.*, No. 09-02115-EFM, 2010 WL 5149280, at *1, fn. 3 (D. Kan. Dec. 13, 2010) (denying motion to reopen discovery for the sole purpose of determining plaintiffs' identity because, aside from the potential prejudice outweighing the information's relevance, defendants had not put forth any evidence to call into question that plaintiffs were former employees); and *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 503 (W.D. Mich. 2005) (requiring plaintiffs to execute affidavits regarding their relevant work history and permitting defendants' verification of that information, while granting motion for protective order as to information related to plaintiffs' immigration status). The Court should take a similarly nuanced approach here, by prohibiting discovery into only the carefully-crafted set of discrete incidents which would cause an *in terrorem* effect, and which bears no material relevance to the issues at hand.

### III. <u>Defendants have not demonstrated that the sought-after discovery is materially relevant.</u>

Plaintiff has taken care to move this Court to prohibit only the discovery which is at once the most prejudicial to her and also not materially relevant to the claims or defenses in this lawsuit. In their Response, Defendants claim the sought-after discovery is relevant because it "relate[s] directly to her authority and exercise of discretion and independent judgement with respect to matters of significance" (Response at 3) and Plaintiff's "ability to make decisions without supervision in matters of obvious importance." (Response at 5.) However, the requested relief would not preclude Defendants from questioning Plaintiff about her job duties, discretion, judgment, and decision-making capacity. For example, Defendants could ask Plaintiff whether she was authorized to contact vendors, to modify the company address on file, to make ACH or wire transfers from Defendants' accounts, and to enter amounts into Defendants' payroll system, and the way in which she was supervised in those tasks.  If "the issue is not misconduct, but her ability to make decisions with regard to matters of importance," (Response at 4) then it defies logic that Defendants couldn't simply question Plaintiff about any number of incidents *like* those enumerated, but which do *not* involve criminal accusations of her wrongdoing.

At the same time, testimony about the circumstances surrounding these six incidents would only be marginally relevant, at best, to the administrative or managerial exemption. For example, if Defendants establish that Plaintiff was generally authorized to, and did, make ACH transfers in excess of $30,000, it does nothing to further bolster Defendants' position that Plaintiff did in fact authorize the specific ACH transfer of $39,582.35 at issue in this motion. Indeed, the fact that Defendant Kanetzky accuses Ms. Mac of criminal wrongdoing when she processed certain transactions that he says he did not authorize illustrates how little discretion he actually delegated to her.

*Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Protective Order*   Page 5 of 6

## IV.     Conclusion

Plaintiff has shown good cause for why Defendants' questioning into areas they have alleged her criminal misconduct would create an *in terrorem* effect for her and other civil rights plaintiffs, and that that *in terrorem* effect would severely outweigh any marginal relevance of the information sought. As a result, Plaintiff respectfully requests that Plaintiff's Motion for a Protective Order be granted.

Dated: September 2, 2020

Respectfully Submitted,

EQUAL JUSTICE CENTER

*/s/ Caitlin Boehne*
Caitlin Boehne
Texas State Bar No. 24075815
Email: cboehne@equaljusticecenter.org
Aaron Johnson
Texas State Bar No. 24056961
Email: ajohnson@equaljusticecenter.org
314 E. Highland Mall Blvd., Ste. 401
Austin, Texas  78752
Fax (512) 474-0008
Tel (512) 474-0007, ext. 110

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Troy L. Voelker
> McNery & Voelker, P.C.
> First Texas Bank Building
> 500 Round Rock Avenue, Ste. 2
> Round Rock, TX 78664
> (512) 255-6940
> troy@mcneryvoelker.com

 */s/ Caitlin Boehne*
Caitlin Boehne